UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ROBERT F. SEARLE,

                                 Plaintiff,

                                           Case # 23-CV-6342-FPG

v.

                                           DECISION AND ORDER

UNITED STATES DEPARTMENT OF VETERANS
AFFAIRS, and DOUGLAS A. COLLINS[1] in his
OFFICIAL CAPACITY AS SECRETARY OF
VETERANS AFFAIRS

                                 Defendants.

## INTRODUCTION

Plaintiff Robert F. Searle brings this action against the United States Department of Veterans Affairs ("VA") and Douglas A. Collins in his official capacity as Secretary of Veterans Affairs. ECF No. 2. Plaintiff alleges that he suffered discrimination, harassment, and retaliation by the VA in violation of Title VII of the Equal Rights Act, 42 U.S.C. § 2000e *et seq*. ("Title VII") and the Equal Employment Opportunity Act, 42 U.S.C. § 2000e-16. Defendants move for summary judgment on Plaintiff's claims. ECF No. 29. Plaintiff opposes the motion in part. ECF No. 33. For the reasons that follow, Defendants' motion for summary judgment is GRANTED.

## LEGAL STANDARD

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[1] The Court notes that Plaintiff originally named Denis R. McDonough, the Secretary of Veterans Affairs at the time of filing, as a defendant in this action. On February 5, 2025, Douglas A. Collins was sworn in as Secretary of Veterans Affairs. Pursuant to Fed. R. Civ. P. 25(d), Secretary Douglas A. Collins is automatically substituted as a defendant in place of former Secretary Denis R. McDonough. *See* Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

Fed. R. Civ. P. 56(a).  Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "Rule 56 thus contemplates that the court will sometimes deny the motion because the facts are genuinely in dispute and other times because the law does not support the movant's position."  *Dupree v. Younger*, 598 U.S. 729, 737 (2023); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

"Material facts are those which might affect the outcome of the suit under the governing law, and a dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Electra v. 59 Murray Enter., Inc.*, 987 F.3d 233, 248 (2d Cir. 2021) (citation omitted).  "It is the movant's burden to show that no genuine factual dispute exists, and all reasonable inferences must be drawn in the non-movant's favor."  *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) (citations omitted).  That is not to say that the non-moving party bears no burden.  Rather, "[o]nce a movant has made that showing, the nonmovant must set forth specific facts showing that there is a genuine issue for trial."  *Bustamente v. KIND, LLC*, 100 F.4th 419, 432 (2d Cir. 2024) (internal quotation marks and citation omitted).  In doing so, the non-moving party may not rely on "[c]onclusory allegations, conjecture, and speculation."  *Id.* (citation omitted); *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (citation omitted).

## BACKGROUND

The following facts are undisputed except where noted.  Plaintiff worked at the Canandaigua VA between 2002 and 2022, where he was employed as a full-time chaplain beginning in 2010 and later as a supervisory chaplain beginning in 2013.  ECF No. 29-2 at 6–8, 41.  Plaintiff filed an Equal Employment Opportunity ("EEO") complaint on April 24, 2020 ("First

Complaint"), alleging that Bruce Tucker, the Canandaigua VA's Medical Center Director, discriminated against Plaintiff on the basis of his religion as a Methodist by failing to provide adequate publicity of the chaplain services activities. *Id.* at 9–10, 442. Plaintiff withdrew his First Complaint in May 2020 after Mr. Tucker agreed to resume the promotion of the chaplain services activities. ECF No. 2 ¶ 10; ECF No. 34 at 9. Plaintiff alleges that Mr. Tucker provided public coverage for approximately a year before discontinuing the promotion. ECF No. 2 ¶ 11.

In 2020, the VA planned to renovate the Canandaigua VA campus. ECF No. 29-2 at 128. The VA planned to accommodate the Catholic, Protestant, Jewish, and Muslim faiths in an interim interfaith chapel during the renovation. *Id.* The design of the new interim interfaith chapel was to comply with the Veterans Health Administration Directive 1111 ("Directive 1111"), which requires VA facilities to have a religiously neutral interfaith chapel. *Id.* at 147.

Plaintiff and Eric Smith, a VA head engineer, were assigned to develop a design plan for the interim interfaith chapel. *Id.* at 13. Plaintiff's design placed the Catholic prayer space in a shared area designated for the Protestant faith; divided the Jewish prayer space and the foyer with a curtain; and placed the Muslim prayer area in the foyer. *Id.* at 23–27. Mr. Smith disagreed on certain aspects of Plaintiff's design, such as separating the Jewish prayer space and the foyer with a curtain and transferring some of the Jewish religious items to the interim interfaith chapel. *Id.* at 36. In March 2021, Plaintiff sent Mr. Smith an email about the Jewish space, stating that Mr. Smith was being antisemitic. *Id.* at 290. In another email in May 2021, Plaintiff accused Mr. Smith of "discrimination" for purchasing a new Ark "to cover [Mr. Smith's] intentions not to place the Tabernacle in the Jewish space." *Id.* at 292.

Plaintiff alleges that in September 2021, the VA changed the design plans without ever explaining why Plaintiff's design plans were unacceptable. ECF No. 2 ¶ 16; ECF No. 33 ¶¶ 34.

Plaintiff alleges that he raised "religious based objections" to the new design because the VA's plans "did not provide adequate space for the needs of the Jewish faith," which the administration refused to consider. ECF No. 2 ¶ 16; ECF No. 33 ¶ 19.

In October 2021, a VA Administrative Investigation Board ("AIB") began investigating Plaintiff's conduct relating to the design of the interim interfaith chapel and his overall performance as a VA employee. ECF No. 29-2 at 360–61. Specifically, the AIB investigated issues, including, whether Plaintiff violated Directive 1111, whether Jewish items were water-damaged, whether Plaintiff treated religions unfairly or unequally, whether Plaintiff was insubordinate, whether Plaintiff disregarded the VA's code of conduct, and whether Plaintiff engaged in inappropriate supervisory conduct. *Id.* at 360. During the investigation, Plaintiff was demoted to staff chaplain. *Id.* at 166. On November 11, 2021, Plaintiff contacted an EEO counselor about complaints of employment discrimination. *Id.* at 450.

Plaintiff alleges that on November 22, 2021, he received a positive employee review that graded Plaintiff as "fully successful" in all categories. ECF No. 33 ¶ 68; ECF No. 33-8. However, on December 13, 2021, the AIB ultimately recommended that "appropriate administrative or disciplinary action be taken regarding the behavior of [Plaintiff]" after finding that the following facts, among others, were substantiated: (1) Plaintiff failed to follow Directive 1111; (2) there were water-damaged items in the Jewish Chapel that were no longer serviceable; (3) Plaintiff unfairly or unequally treated the Jewish and Muslim faiths; (4) Plaintiff engaged in acts of insubordination; (5) Plaintiff's communications with his supervisors were derogatory, accusatory, and demanding in tone, (6) Plaintiff showed a disregard for the time and attendance policy; and (7) Plaintiff

4

engaged in inappropriate supervisory conduct generally.[2]  ECF No. 29-2 at 365–88.  On January 6, 2022, Plaintiff filed an EEO complaint ("Second Complaint") where he alleged that he was subject to disciplinary action "based on religion and retaliation for [his] prior EEO claim" that resulted in his demotion, removal from office, and limited service to veterans.  *Id.* at 450.

Plaintiff alleges that the VA began its retaliation against him again after he filed the Second Complaint.  ECF No. 33-13 at 9.  In February 2022, Elizabeth Gobeli, the Acting Chief Chaplain, ordered Plaintiff to remove the word "Christ" from his reading of scripture to be inclusive of non-Christian families attending an Ecumenical Memorial Service.  ECF No. 29-2 at 391–92.  On March 9, 2022, Plaintiff's leave request due to car trouble was denied when Plaintiff could not produce a mechanic's receipt upon Chaplain Gobeli's request.  *Id.* at 405; ECF No. 29-3 ¶¶ 115–16; ECF No. 33-11 ¶¶ 115–16.  On March 29, 2022, the Canandaigua VA removed the word "church" from a Facebook post that Plaintiff had prepared for the annual national Vietnam War Veterans Day remembrance service.  ECF No. 29-2 at 425–27.  Plaintiff alleges that in April 2022, the VA prohibited Plaintiff from participating in a courtesy "death notification" ritual for the family of a deceased veteran.  ECF No. 2 ¶ 18.

On April 5, 2022, a notice of proposed removal was issued that charged Plaintiff with unbecoming conduct and neglecting his duty.  ECF No. 29-2 at 431–34.  It stated that Plaintiff engaged in unbecoming conduct by (1) sending emails to Chaplain Gobeli in March 2022 where Plaintiff used "harsh[], rude[], or condescending[]" language; (2) sending an email to Chaplain Gobeli in March 2022 that disrespected the chain of command and supervisory/departmental authority; (3) inappropriately giving communion in October 2021 and January 2022; and

---

[2] Despite stating that he disputes this fact, ECF No. 29-3 ¶¶ 97–98; ECF No. 33-11 ¶¶ 97–98, Plaintiff actually contests the AIB's conclusions in general, rather than disputing the content of the AIB's findings and recommendations themselves, ECF No. 33 ¶ 4; ECF No. 33-5.

(4) creating a choking hazard by inappropriately offering communion wafers to a veteran who had swallowing precautions in January 2022. *Id.* at 432. Plaintiff was also charged for neglecting his duty by, *inter alia*, violating Directive 1111 when developing the interim interfaith chapel space and improperly storing and damaging Jewish artifacts and icons. *Id.* at 432–33. Plaintiff was ultimately removed from the VA's employment on April 22, 2022. *Id.* at 436–40.

In June 2023, Plaintiff brought this action, alleging that he suffered discrimination, harassment, and retaliation by the VA in violation of Title VII and the EEO Act. ECF No. 2. On July 21, 2025, Defendants moved for summary judgment on Plaintiff's claims. ECF No. 29. Plaintiff opposed the motion in part. ECF No. 33.

## DISCUSSION

Defendants move for summary judgment on Plaintiff's claims. ECF No. 29. As an initial note, Defendants request that the VA be dismissed from this case. ECF No. 29-4 at 10–11. Although Plaintiff opposes Defendants' motion, he concedes that his claims cannot proceed against the VA. ECF No. 33-13 at 9. As such, all claims against the VA are dismissed.[3]

Plaintiff brought the instant action in June 2023, alleging two causes of action against Defendant: (1) discrimination, and (2) retaliation in violation of Title VII. ECF No. 2.[4] Defendant argues that he is entitled to summary judgment on both claims. ECF No. 29. The Court discusses Plaintiff's remaining claims below.

---

[3] As the VA has been dismissed, hereinafter, references to Defendant include only Douglas A. Collins in his official capacity as Secretary of Veterans Affairs.

[4] In the complaint, Plaintiff alleges that Defendant "harass[ed] the Plaintiff based upon his religious based concerns and criticisms and his attempts to advocate for the religious and spiritual needs of the veterans." ECF No. 2 ¶ 15. Yet, in his opposition, Plaintiff omits harassment and argues that his claims are only based on "religious based employment discrimination and retaliation under Title VII." ECF No. 33-13 at 1. Because harassment is not listed as a separate cause of action in the complaint, it appears that Plaintiff has pleaded facts related to harassment only to support his other claims, and not as a separate cause of action. *See Kear v. Katonah Lewisboro Cent. Sch. Dist.*, No. 05 Civ. 7038, 2007 WL 431883, at *3 (S.D.N.Y. Feb. 7, 2007).

6

## I.    Discrimination Claim

Plaintiff argues that Defendant "discriminate[d] against … the Plaintiff based upon his religious based concerns and criticisms and his attempts to advocate for the religious and spiritual needs of the veterans served by the facility."  ECF No. 2 ¶ 15.[5]  Defendant moves for summary judgment on Plaintiff's claim.  ECF No. 29-4 at 11.

Title VII provides that all federal employees "shall be made free from any discrimination based on race, color, religion, sex, or national origin."  42 U.S.C. § 2000e–16(a).  "A plaintiff may claim a violation of religious discrimination under Title VII under theories of either disparate treatment or denial of reasonable accommodation."  *Bind v. City of New York*, No. 08 Civ. 11105, 2011 WL 4542897, at *9 (S.D.N.Y. Sept. 30, 2011) (first citing *Feingold v. New York*, 366 F.3d 138 (2d Cir. 2004) (disparate treatment); and then citing *Cosme v. Henderson*, 287 F.3d 152 (2d Cir. 2002) (denial of reasonable accommodation)).  Because Plaintiff does not raise a failure to accommodate claim, his discrimination claim will be analyzed under the disparate treatment theory.[6]

"To succeed on a Title VII disparate treatment claim, a plaintiff must prove discrimination either by direct evidence of intent to discriminate or, more commonly, by indirectly showing circumstances giving rise to an inference of discrimination."  *Bart v. Golub Corp.*, 96 F.4th 566, 569–70 (2d Cir. 2024) (quotation marks omitted) (quoting *Banks v. Gen. Motors, LLC*, 81 F.4th

---

[5] Plaintiff refers to discrimination under the New York State Human Rights Law ("NYSHRL") in his opposition, ECF No. 33-13 at 6, but does not make a NYSHRL claim in his complaint.  Even if Plaintiff were trying to raise a NYSHRL claim, he "may not amend the Complaint through [his] moving papers."  *Petroff Amshen LLP v. Alfa Rehab PT PC*, No. 19-CV-1861, 2021 WL 960394, at *11 (E.D.N.Y. Mar. 15, 2021), *aff'd*, No. 21-847, 2022 WL 480475 (2d Cir. Feb. 17, 2022).  Therefore, the Court will not analyze any arguments based on NYSHRL.

[6] Although Plaintiff listed "religious accommodation" as a basis for his EEO complaint filed in January 2022, ECF No. 29-2 at 450, he does not refer to religious accommodation in his complaint, ECF No. 2, nor does he do so in his opposition, ECF No. 29-4 at 16–17.  Rather, Plaintiff applies the *McDonnell Douglas* test, which framework is utilized to analyze disparate treatment claims.  ECF No. 33-13 at 6–9.

242, 270 (2d Cir. 2023)).    When the plaintiff has only circumstantial, indirect evidence of a discriminatory motive, courts in this Circuit apply the framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to determine "whether the plaintiff has shown sufficient evidence of discrimination to survive summary judgment." *Bart*, 96 F.4th at 569 (citation omitted). Thus, "a plaintiff must first make out a *prima facie* showing of discrimination by showing that: '(1) [he] is a member of a protected class; (2) [he] is qualified for [his] position; (3) [he] suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination.'" *Banks*, 81 F.4th at 270 (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000)).    Once a *prima facie* case has been shown, the burden shifts to the employer who must "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802.    Upon this articulation, the burden then shifts back to the plaintiff who must show that the defendant's "stated reason for the adverse employment action was in fact pretext" for discrimination. *United States v. Brennan*, 650 F.3d 65, 93 (2d Cir. 2011) (brackets and citation omitted).

Defendant argues only that Plaintiff fails to satisfy the last prong of the *McDonnell Douglas* test, which requires a showing of an inference of discrimination.[7]   ECF No. 29-4 at 14–15. The Court agrees.

---

[7] There is some confusion surrounding the adverse action Plaintiff allegedly suffered.  Plaintiff puts forth a list of factual allegations to argue that Defendant retaliated and discriminated against him.  ECF No. 2 ¶¶ 16, 18.  However, Plaintiff does not identify which of these facts support which of his claims.  In the summary judgment motion, Defendant only addresses allegations relating to Directive 1111, the interim interfaith chapel's development, and Plaintiff's subsequent demotion and termination in relation to the discrimination claim, but not the other factual allegations.  ECF No. 29-4 at 14.  Because Plaintiff does not argue in his opposition that the other factual allegations also relate to his discrimination claim, ECF No. 33-13 at 8–9, the Court concludes that Plaintiff concedes that the other facts are irrelevant to his discrimination claim.  *See Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014) (holding that "in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned").

Rather than explaining Defendant's discriminatory animus, Plaintiff merely claims that he experienced discrimination because he "cannot be separated as a man from [his] religious convictions and [his] occupation as a Chaplain." ECF No. 33 ¶ 2; ECF No. 33-13 at 8–9. This argument is confusing and, in any event, without merit. If Plaintiff is arguing that any adverse treatment against him constitutes *de facto* discrimination because any act as a chaplain is essentially a practice of his religion, the claim is untenable. A plaintiff's status as a religious leader does not relieve him of the requirement to show inferences of discrimination based on his protected group. *See, e.g.*, *Wallace v. Wesleyan Univ.*, No. 23-CV-1461, 2025 WL 357838, at *5 (D. Conn. Jan. 31, 2025) (a Catholic chaplain required to demonstrate discrimination due to his own membership of his religion); *Ezeh v. Wilkie*, No. 13-CV-6563, 2019 WL 1428822, at *13 (W.D.N.Y. Mar. 29, 2019) (finding no inference of discrimination where a part-time Catholic chaplain could not show, *inter alia*, that decision makers expressed animosity against his religion).

Additionally, even if Plaintiff is arguing that he was discriminated against due to his "religious based objections" to the interim interfaith chapel, Plaintiff's discrimination claim still fails because it relates to his advocacy on behalf of the Jewish faith. ECF No. 33 ¶¶ 19–20, 31–33. Advocacy on behalf of another religion alone is insufficient to establish a discrimination claim as the plaintiff must show that his or her own religion resulted in discrimination. *See Wallace*, 2025 WL 357838, at *5 ("To the extent Mr. Wallace alleges his termination was partially due to his advocacy on behalf of the Muslim community, he has failed to state a claim that he experienced discrimination due to his own religion"); *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("It is axiomatic that mistreatment at work, whether through subjection to a hostile environment or through such concrete deprivations as being fired or being denied a promotion, is actionable under Title VII only when it occurs because of an *employee's … protected characteristic*")

9

(emphasis added).  Here, there is no evidence showing, nor does it appear that Plaintiff even alleges, that Plaintiff suffered discrimination because of his own religion.

Therefore, because Plaintiff has failed to make a sufficient showing of an essential element of his case with respect to which he has the burden of proof, *see Celotex Corp.*, 477 U.S. at 323, Defendant is entitled to summary judgment on the discrimination claim.

## II.    Retaliation Claim

To establish a *prima facie* case of retaliation, the plaintiff must demonstrate that "(i) he engaged in protected activity; (ii) the defendant was aware of that activity; (iii) he suffered a materially adverse action; and (iv) there was a causal connection between the protected activity and that adverse action."  *Livingston v. City of New York*, 563 F. Supp. 3d 201, 245 (S.D.N.Y. 2021) (citation omitted).  Once a *prima facie* case of retaliation is established, the burden shifts to the defendant to demonstrate that a legitimate, non-retaliatory reason existed for the adverse action.  *See Alvarado v. United Hospice, Inc.*, 631 F. Supp. 3d 89, 118–19 (S.D.N.Y. 2022).  Upon this showing, the burden shifts back to the plaintiff who must prove "that the desire to retaliate was the but-for cause of the challenged employment action."  *Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015) (citation omitted).  That is, "[t]he plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action."  *Freckleton v. Ambulnz NY LLC*, No. 21-CV-4615, 2025 WL 2689589, at *12 (E.D.N.Y. Sept. 19, 2025) (quotation marks and citation omitted); *see Bassi v. N.Y. Med. Coll.*, No. 23-278, 2024 WL 3717317, at *2 (2d Cir. Aug. 8, 2024).

Plaintiff claims that the VA (1) retaliated against him because Plaintiff filed his First Complaint; and (2) began retaliating against him again after Plaintiff filed his Second Complaint.[8] ECF No. 33-13 at 9. Defendant moves for summary judgment on both retaliation claims. ECF No. 29-4 at 22. The Court address each in turn.

### A. The First Complaint

Plaintiff argues that after filing the First Complaint in April 2020, the Canandaigua VA began to retaliate against him beginning around September 2021. ECF No. 2 ¶ 15. Defendant argues that he is entitled to summary judgment because no causal connection exists between Plaintiff's protected activities and the subsequent adverse actions. ECF No. 29-4 at 24–25. The Court agrees with Defendant.

Because Plaintiff does not provide direct evidence of the VA's retaliatory animus, he must rely on circumstantial evidence. *See Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015). Here, Plaintiff solely relies on temporal proximity to argue causation. ECF No. 33-13 at 9. The earliest alleged adverse action took place in September 2021. This is over a year and a half after Plaintiff filed the First Complaint in April 2020. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (measuring temporal proximity from the time an employer knew of the protected activity and the time an adverse employment action took place); *Williams v. Metro N. R.R.*, No. 16 Civ. 1141, 2016 WL 4400307, at *3 (S.D.N.Y. Aug. 17, 2016). Without more, this temporal relationship is too attenuated to establish a causal connection to show an inference

---

[8] Prior to filing the Second Complaint in January 2022, Plaintiff sought EEO counseling in November 2021. ECF No. 29-2 at 450. Although Defendant concedes that this is a protected activity, ECF No. 29-4 at 25, Plaintiff makes no such arguments alleging that this is a protected activity upon which his claim is based, ECF No. 2; ECF No. 33-13. Similarly, to the extent that other informal complaints Plaintiff made to management could potentially be protected activities, *see Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 65 (2d Cir.1992), Plaintiff does not raise any related arguments. Because it is not this Court's responsibility to raise and make Plaintiff's arguments for him, *see Flores v. Tryon*, No. 15-CV-6623, 2017 WL 3705124, at *3 n.4 (W.D.N.Y. Aug. 28, 2017), the Court will not consider these potential claims.

of retaliation. *See Sealy v. State Univ. of N.Y. at Stony Brook*, 834 F. App'x 611, 614 (2d Cir. 2020) (four to eleven months was "simply too long of a gap"); *Fabain v. Westchester Cnty.*, No. 24-CV-6482, 2026 WL 507840, at *5 (S.D.N.Y. Feb. 24, 2026) (seven months to one year is insufficient to establish an inference of retaliation).

Accordingly, Plaintiff has failed to make a sufficient showing of an essential element of his retaliation case. *See Celotex Corp.*, 477 U.S. at 323.

### B.   The Second Complaint

Plaintiff alleges that he was retaliated against for filing the Second Complaint. ECF No. 33-13 at 9. Specifically, Plaintiff alleges that in retaliation for filing his Second Complaint, the VA: (1) denied his request for leave; (2) accused him of improperly storing and damaging Jewish artifacts and icons; (3) directed Plaintiff to remove the word "Christ" from a scripture reading; (4) removed the word "church" from a Facebook post that Plaintiff prepared; (5) proposed removing and ultimately removed Plaintiff from his position; (6) accused Plaintiff of improperly serving communion and creating a choking hazard to a veteran; and (7) prohibited Plaintiff from participating in a "death notification" ritual of a deceased veteran. ECF No. 2 ¶ 18. Defendant argues that Plaintiff cannot make out a *prima facie* case because no causal connection exists. ECF No. 29-4 at 25. In addition, Defendant argues that Plaintiff's claim fails because the VA's actions had a legitimate, non-retaliatory reason. *Id.* at 26. The Court does not discuss Defendant's causal connection argument because it concludes that even if assuming that Plaintiff established a *prima facie* case of retaliation, Plaintiff fails to show that Defendant's reasons for adverse actions were pretext for retaliation.

Defendant satisfies his burden of establishing a legitimate, non-retaliatory reason for the alleged adverse actions. It is well-documented that the Canandaigua VA became gradually and

increasingly dissatisfied with Plaintiff's performance.  The AIB began investigating Plaintiff's conduct from October 2021 and ultimately recommended in December 2021 that "appropriate administrative or disciplinary action be taken" against Plaintiff as the AIB had "no confidence in the ability of [Plaintiff] to be an effective service chief after hearing sworn testimony from credible witnesses."  ECF No. 29-2 at 365–88.  Consequently, Plaintiff was permanently demoted.  ECF No. 33 ¶ 55.  The notice of proposed removal in April 2022 shows increased dissatisfaction with Plaintiff by integrating the AIB's findings and addressing Plaintiff's new alleged conduct: sending harassing and disrespectful communications, acting in insubordination, and inappropriately giving communion and creating choking hazards.  ECF No. 29-2 at 431–34.  These are legitimate, non-retaliatory reasons for the adverse actions that, as Defendant points out, ECF No. 29-4 at 15–16, 26, gradually progressed before Plaintiff filed the Second Complaint, *see Slattery v. Swiss Reinsurance America Corp.*, 245 F.3d 87, 93 (2d Cir. 2001).

Defendant having met his burden under the *McDonnell Douglas* test*,* the burden then shifts back to Plaintiff to demonstrate that Defendant's proffered explanation was pretextual.  Plaintiff relies on several claims to argue pretext.  However, none are sufficient to show but-for causation.

First, Plaintiff relies on the positive employee review he received in November 2021.[9]  ECF No. 33 at 10; ECF No. 33-13 at 9.  This single favorable evaluation, however, is insufficient to demonstrate pretext.  *See Rubinow v. Boehringer Ingelheim Pharm., Inc.*, 496 F. App'x 117, 119 (2d Cir. 2012) (holding that an isolated incident of positive feedback given to an employee for fleeting improvement, by itself, was insufficient to create fact issue necessary to survive summary judgment as to whether the employer's reason for termination, namely, insubordinate and volatile

---

[9] Plaintiff claims that he had "10 years of unquestioned service," ECF No. 2 ¶ 18, and that he received "fairly good evaluations," ECF No. 33-5 at 6.  However, the only evidence that Plaintiff proffers is the employee review that he received in November 2021.  ECF No. 33-8.

workplace behavior, was pretext).  This is especially so here because "this is simply not a case in which a there [sic] was a sudden decline in performance evaluations immediately preceding [the adverse action]" that could otherwise indicate pretext.  *Macropoulos v. Metro. Life Ins. Co.*, No. 15 Civ. 6096, 2018 WL 1508564, at *12 (S.D.N.Y. Mar. 26, 2018).  Rather, as the AIB report shows, Plaintiff's evaluations of his overall performance as a VA employee have been overwhelmingly negative even before Plaintiff filed the Second Complaint.  ECF No. 29-2 at 365–88.  The single positive employee review therefore cannot establish pretext.

Second, Plaintiff relies on his own conclusory allegations, which he fails to offer any evidence to support.  For instance, Plaintiff argues that he had given communion for years despite not being a Catholic priest, had "never been forbidden" from doing so, and that he was unaware of a veteran who had swallowing restrictions.  ECF No. 33 ¶¶ 63–64.  Plaintiff, however, must have been aware of the VA's disapproval of his actions prior to filing the Second Complaint as the AIB's report that was issued the month before contains witness testimonies that complain about Plaintiff's exact same conduct.  ECF No. 29-2 at 370–84.  Plaintiff's argument that his leave request was denied "in a manner uniquely harsh given the informal practice normally followed at the time," ECF No. 33-13 at 5, is also contradicted by the AIB's report that discussed Plaintiff's "disregard for the time and attendance policy," ECF No. 29-2 at 386.  In addition, Plaintiff makes allegations that he was prohibited from attending a "death notification" ritual, ECF No. 33-13 at 6, but does not provide any evidentiary support.  These conclusory allegations are insufficient to successfully demonstrate pretext or to raise a genuine issue of material fact that survives summary judgment.  *See Bustamente*, 100 F.4th at 432; *see also Smith v. N.Y. & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 345 (S.D.N.Y. 2020).

Finally, Plaintiff relies on temporal proximity to argue that his factual allegations support pretext. However, "[w]hile temporal proximity is enough to satisfy a plaintiff's minimal burden at the *prima facie* stage, 'temporal proximity alone is insufficient to defeat summary judgment at the pretext stage.'" *Rumsey v. Ne. Health, Inc.*, 89 F. Supp. 3d 316, 338 (N.D.N.Y. 2015), *aff'd*, 634 F. App'x 318 (2d Cir. 2016), *as corrected* (Jan. 29, 2016) (brackets omitted) (quoting *Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 847 (2d Cir.2013)). Because Plaintiff has failed to demonstrate that Defendant's adverse actions were pretextual, Plaintiff's retaliation claim fails.

Consequently, Defendant is entitled to summary judgment on the retaliation claims.

## CONCLUSION

For these reasons, Defendant's motion for summary judgment is GRANTED. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: March 20, 2026
        Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York

15